# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY CO.,** | **CIVIL ACTION** |
| **v.** | **No. 25-0797** |
| **CAMILLE CHTEH, et al.** | |

**Henry, J.**                                                                 **January 23, 2026**

## MEMORANDUM

Sometimes a defendant sees the complaint and, reading through the paragraphs, says to herself, "I really do not know if that part is true or not." She may look into the matter to see whether that clears anything up, but the defendant has to file a responsive pleading at some point, and she may not have any way to discover the truth of the matter on its own. She may be constrained to answer, "I looked into it, but I really do not know if that part is true or not." The question in this case is: What if the plaintiff denies the defendant's denial, claiming it is unreasonable and unbelievable? When should the Court decide that the defendant really *does* know what it claims not to know, or what it should know, even at the earliest stages of the case?

The defendants in this insurance coverage case admit that one of them had an insurance policy with the plaintiff; they are benefiting from insurer-provided counsel in the underlying state court case. Still, they deny knowing at the pleading stage whether the policy attached to the insurer's complaint is exactly right. Although the case is still at pleadings, the insurer says there is no issue of material fact on this matter, since a certified copy of the policy was turned over in discovery in the underlying lawsuit in state court. I must decide whether the defendants' denial is

1

so threadbare and unbelievable as to fail as a matter of law. Because I try to keep a good imagination and not cut things off before I have more facts, I deny the denial's denial—for now.

## I. <u>Background</u>

State Farm is an insurer suing for a declaratory judgment that it has no duty to continue to defend or indemnify defendants Camille Chteh or Rafat Shteh under an insurance policy. An insurance "policy" is just an insurance contract, and State Farm attaches its alleged policy to its complaint.[1] Chteh and Shteh are named defendants in a state court action in Lehigh County. The case arises from the death of Bassam Mohartam, a worker who allegedly used a gas-powered tool in an unventilated basement and then fatally asphyxiated on the tool's carbon monoxide exhaust fumes.[2] The present complaint alleges that Shteh was named as an insured under the contract and that Chteh was a qualifying insured as Shteh's property manager, ECF 1 ¶¶ 13–14, but that the contract excluded coverage relating to "bodily injury" from "pollutants," an exclusion that included death from carbon monoxide, at least in some circumstances. *Id.* ¶¶ 42–44 ("bodily injury" defined to include death, "pollutant" defined to include "any . . . gaseous . . . fumes . . ." among other things); *see* policy attached to complaint, ECF 1-3 at 9.

State Farm filed its complaint on February 14, 2025, listing Chteh, Shteh, and Mohartam's estate as defendants in the caption, although it stated no claims against the estate. On April 24, 2025, Chteh and Shteh (collectively, "the insureds") filed an answer, ECF 11, as did the estate, ECF 10. Both answers indicated that, although Shteh did have a policy with State Farm relating to the building in which Mohartam died, all defendants "lack the information to admit the specific

---

[1] The attached policy appears nearly complete, with only the premium redacted. *See* ECF 1-3.

[2] Mohartam's name is amenable to a few different spellings, which are collected in the complaint: Bassam Mohartam, Basam Mohartam, and Bassam Mohartem. I intend no disrespect to the deceased or the bereaved by relying on the first-provided name.

content of the policy, which is therefore denied." Answer of Shteh and Chteh, ECF 11, ¶¶ 13, 21; *see* Answer of Estate of Nabil Mohartam, ECF 10 ¶ 21 ("After reasonable investigation, [the estate] lacks knowledge or information sufficient to form a belief about the truth of the allegations of" the contents of the contract.).

## II. <u>Legal Framework</u>

State Farm moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). This procedure permits the Court to grant judgment based off the pleadings alone "if movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Id.* In considering such a motion, the Court will "accept the nonmoving party's factual allegations as true and construe all allegations in the light most favorable to that party." *Fed Cetera, LLC v. National Credit Services, Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-movant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

In a motion for judgment on the pleadings, my review is limited to the pleadings. To the extent that the parties present extrinsic material, I may either exclude it or treat the motion instead as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

## III. <u>Discussion</u>

State Farm argues that the insureds' denials, which assert that those two defendants lack the information to admit the exact content of the policy alleged in the complaint, are dishonest "attempt[s] to create a disputed issue of material fact." ECF 22 at 1. It refers to the attached policy as "indisputably issued to Shteh"—and it notes that a certified copy was already tendered in discovery in the underlying state court action. *Id.* at 2.

### A. Denial by Ignorance in General

Pleading denial by ignorance is contemplated and permitted under the federal rules. Fed. R. Civ. P. 8(b)(5) states that "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Denials must at least be "warranted on the evidence or, if specifically so identified, [be] reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4).[3] Where a fact is alleged and "not denied," it is deemed admitted, so a putative denial that is ruled not to operate as a denial will result in a "not denied" allegation, which is an admitted allegation. Fed. R. Civ. P. 8(b)(6).

The question is whether the defendants' denials are so insufficient that they function instead as admissions. It is a strange thing for a denial to become an admission, but courts have so ruled under egregious circumstances. As a member of this Court put it, denial by ignorance will be treated as admission "when the matter is obviously one as to which defendant has knowledge or information." *David v. Crompton & Knowles Corp.*, 58 F.R.D. 444, 447 (E.D. Pa. 1973). Or, in the words of the Ninth Circuit, a denial will fail where "the assertion of ignorance is obviously sham." *Harvey Aluminum (Inc.) v. N.L.R.B.*, 335 F.2d 749, 758 (9th Cir. 1964) (considering regulatory procedures by analogy to Rule 8). Therefore, for instance, the Ninth Circuit held that a company could not claim to be ignorant of whether it and another company were commonly owned and controlled where the National Labor Review Board had already specifically ruled on the matter *four times*. *Id.*

---

[3] Although an attachment to a pleading is often "evidence," Rule 11(b)(4) clearly does not contemplate that denials must be based on "the evidence" only as asserted by or attached to the pleadings. *See infra* § III.C.–D.

## B. Rulings Might Depend on the Answering Party

Several courts have arrived at the same ruling on less overdetermined and clearly noticed facts than those in *Harvey Aluminum*. This Court ruled that a manufacturer's denial by ignorance as to terms of purchase agreements to which it was a party and therefore which were "peculiarly within [its] control and knowledge" was insufficient, because it did "not seem too burdensome to hold [that manufacturer] to knowledge of the terms of its purchase agreement and their effect on its rights and liabilities more than nine years after the sale." *Crompton & Knowles Corp.*, 58 F.R.D. at 447. Another court ruled that a corporation *must* have had sufficient knowledge as to whether it was authorized or licensed to do business in Missouri, whether its sole owner was a citizen of Connecticut, and about the dates and basic circumstances of its own claims for property damage, so its denials by ignorance on those fronts failed. *Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC*, No. 4:13-CV-193 CAS, 2013 WL 6801832, at *4 (E.D. Mo. Dec. 23, 2013) (striking several paragraphs from the answer and granting leave to replead). And the Third Circuit upheld judgment against a bank defendant whose denial by ignorance seemed drafted specifically to address the issue of the defendant's *attorney's* "direct, first-hand knowledge," since "he certainly could not say as to these matters of public record that he is without information sufficient to form a belief as to the truth of the averment relating to them." *Nieman v. Bethlehem Nat. Bank*, 32 F. Supp. 436, 437 (E.D. Pa. 1939), *aff'd,* 113 F.2d 717 (3d Cir. 1940).[4] The Court in *Nieman* ruled that the defense attorney's pleading his *own* ignorance was an

---

[4] Judge Kirkpatrick in *Nieman* refers to the defendant whose denial by ignorance failed as "he," although the party was a bank. 32 F.Supp. at 437. Given the criticism of the form of the denial, the suggestion is that it is the defendant's *attorney*, rather than the defendant itself, that is responsible for the adequacy of a limited initial investigation.

immaterial fact and a non-answer by the defendant itself, since to treat it otherwise would be to permit "a patently false answer," *i.e.*, that the bank was without sufficient information. *Id.*[5]

    In this and all the previous examples I was able to find, denials by ignorance failed where they were submitted by businesses, which were explicitly or implicitly held responsible for adequate recordkeeping. *See* 5 Charles Alan Wright, Arthur R. Miller, *et al.*, Fed. Prac. & Proc. § 1262 (4th ed.) (hereinafter "Wright & Miller") (noting that courts frequently impute knowledge to corporations about acts of their agents). Beyond businesses, however, the requirement for parties to investigate or the presumption of keeping adequate records is far less clear. For instance, in *Clay v. District of Columbia*, the court accepted a denial by ignorance by Washington, D.C., regarding information in its own school system where the facts "involve[d] a single student in a large school system" and the answer "does not evidence bad faith or evasion." 831 F. Supp.2d 36, 47 (D.D.C. 2011). Notably, the city pleaded in its answer to the operative complaint that it "lacks knowledge and information . . . because it does not yet have a complete copy of the administrative record." Defs' Answer to Pls' First Am. Compl. at 3, *Clay v. District of Columbia*, No. 09–1612 (D.D.C. May 5, 2011), Dkt. No. 23. When Milwaukee and its sheriff were alleged to have denied by ignorance facts without having done reasonable investigation into the allegations, a judge denied a motion to strike because the plaintiffs cited "no rule or authority from the Court of Appeals for the Seventh Circuit that would have required defendants to do that" investigation. *Prude v. Milwaukee Cnty.*, No. 13-CV-718-BBC, 2014 WL 1276516, at *1 (W.D. Wis. Mar. 27, 2014).[6]

---

[5] The Court did not note any indication as to *why* such information was missing, and it did not consider that for any reason the defendant may have truthfully been without that information. Perhaps that is because at least some of the information was "matters of public record" like "the authorization of the Comptroller of the Currency to bring this suit." *Id.* 436–37. The issue may have been that the party and its lawyer failed to make any reasonable inquiry, as discussed below.

[6] Wright & Miller's influential treatise on federal procedure summarizes this holding as recognizing that the Seventh Circuit "does not require defendants to investigate plaintiff's allegations

State Farm's complaint alleges that Shteh and Chteh and Mohartam were adult individuals working together as property owner, manager, and contractor. Compl. ¶ 25–27. Furthermore, Shteh admits that he is a citizen and resident of Syria. ECF 11 at ¶¶ 8, 11. Even following the logic of the above cases, I am reluctant to assume without any further facts that a mere property owner living across the world, about whose English fluency I know nothing, is so savvy in American business dealings that he should be presumed to keep records as a domestic corporation would be.

### C. Objective Reasonableness, Good Faith, or Bad Faith

Some rulings regarding denial by ignorance use the framework of good faith and bad faith. *See, e.g.*, *Clay*, 831 F. Supp.2d at 47 ("generally resort to the sanction of deeming an allegation as admitted where there is bad faith or evasive pleading"); *Reed*, 2 F.R.D. at 12 (describing denial as "obviously not in good faith"); *Nieman*, 32 F. Supp. at 437 (denials by ignorance of public record, construed as responsive, would have been "palpably untrue" and therefore "not filed in good faith"); *see* Wright & Miller § 1262 (describing good faith as a requirement only implicitly, since denials by ignorance of matters within personal knowledge or public record "cast[] doubt on the good faith of the pleader."); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 737 (1st Cir. 1983) (describing as "settled law that a defendant's good faith" denial by ignorance operates, but citing only Fed. R. Civ. P. 8(b) and the same Wright & Miller section).

Notably, the requirement of "good faith" appears in several of Rule 8(b)'s provisions regarding answers, but *not* in Rule 8(b)(6) on denials by ignorance. Additionally, neither the pleading requirements of Rule 8 nor the more general representation requirements of Rule 11 are based

---

before claiming ignorance." § 1262 n.12. I would not characterize the holding so strongly, since the quoted passage indicates no authority was presented on the point, and I do not find other Seventh Circuit law holding as much.

around good faith. In particular, Rule 11(b) requires that the representations in an answer be "formed after an inquiry *reasonable under the circumstances*" (emphasis mine).[7] Neither its text nor the case law analyzes it under good faith, but instead under a "standard of objective reasonableness." *Dennis v. Pan Am. World Airways, Inc.*, 746 F. Supp. 288, 291 (E.D.N.Y. 1990). With the proviso that a showing of *bad faith* has been used to controvert denials, *e.g.*, *Clay*, 831 F. Supp.2d at 47, the standard is Rule 11's objective test.

### D. Reasonable Inquiry and Doubt

Whether that objectively reasonable inquiry itself must include deeper investigation, particularly by a non-business defendant, is unclear from the case law. Generally, if the information exists in records that are available publicly, "denial of [that] knowledge or information . . . casts doubt on the good faith of the pleader," Wright & Miller § 1262 & n.9, implying some requirement to look into records.[8] Thus, where a defendant stockholder in a bank claimed ignorance about whether the bank suspended payment, closed permanently, and was put in a receivership, this Court considered such information "common knowledge or . . . [a matter] as to which  the party can inform himself with the slightest effort," which rendered the denial "obviously not in good faith"

---

[7] Rule 11(b)(4) goes on to require that denials be "reasonably based on belief or lack of information." Although this could merely amplify the requirement of reasonableness as to the belief or lack of information, that would duplicate the previously cited phrase in the same rule. Instead, the subparagraph's usage seems likelier to refer to the scope of a denial based on what information or belief is lacking. For instance, where a party lacks information regarding a detail of an event but knows that the event did occur, Rule 11(b)(4) may make it impermissible to deny a pleading altogether that states that the event occurred as detailed. Thus, if plaintiff alleges that she "gave birth on October 9," the defendant doula should not deny the pleading by ignorance in full if she recalls the birth but not the date.

[8] The concept of public availability contains within it a broad spectrum of factual possibilities. Information that is "available publicly" may be accessible in the first hit on a web search or located in the basement microfilm department of a town library that is closed for long-term renovations. The concept might extend analogously to materials accessible to the parties but difficult for them to access. *See Clay*, 831 F. Supp.2d at 47.

and the ignorance "patently false." *Reed v. Turner*, 2 F.R.D. 12, 12 (E.D. Pa. 1941). Defendants

are also held, somewhat obviously, to their own personal knowledge. In *Kegerise v. Susquehanna*

*Township School District*, a plaintiff moved for judgment on the pleadings after the defendants

denied by (alleged) ignorance whether one of them had approached a union official to suggest

filing a grievance, and whether the same defendant had visited two of the schools without prior

authorization 321 F.R.D. 121, 124 (M.D. Pa. 2016). Since the group of defendants should have

been able to answer those allegations based on the personal knowledge of the individual himself,

the court required an amended answer. *Id.* at 125.[9]

On something like this theory, State Farm argues that the attached contract's validity should

be deemed admitted.[10] It does this 1) by pointing to facts proving *a* policy was issued, *id.* ("In-

sureds admit . . . that the State Farm Policy was issued to Shteh . . . and State Farm has been

providing a defense to Shteh", ECF 22 at 8), 2) by observing that the insureds' answer "is devoid

of any specific denials or averments" that the policy "does not control the claims," *id.*, and finally,

3) by arguing that the denial is ineffective because it is dishonest and did not evince reasonable

effort to investigate. As to the first argument, the fact that the insureds admitted some other facts

but not this one is irrelevant to whether they admitted the authenticity of the proffered policy as

the governing contract. If anything, their admitting other allegations may lend credibility to their

---

[9] The defendants, including the school district, also denied by ignorance whether an accusation of nepotism had resulted in a special investigation by the school district that cost $15,000. As with other internal records cases, the court required a response to "come from a reasonable effort to obtain knowledge from School District records." 321 F.R.D. at 125.

[10] State Farm's own motion and memorandum of law did not address the issue of the defendants' denials at all, focusing instead on the merits of the pleadings as though the policy were admitted. *See generally* ECF 14 and 14-1; *see also* ECF 14-1 at 2 (only reference to responsive pleadings is the admission from ECF 11 ¶ 47 that Shteh owned the premises in question). The defendants' responses, in turn, do not argue that State Farm forfeited or waived this argument. *See generally* ECF 20, 19. The arguments here appeared in State Farm's reply briefs.

denials by ignorance, because it shows that they were not simply throwing up every barrier even where facts were within their personal knowledge. As to the second, although it is true that the insureds fail to specifically deny the authenticity of the attached policy, they do deny it by ignorance. This merely restates the overall issue.

The question is then whether the denial is ineffective because it does not evince reasonable effort to investigate and is allegedly dishonest. Again, Rule 11(b) requires only that the pleader certify having conducted "an inquiry reasonable under the circumstances." The reasonableness is obviously reliant on facts that are known at this point only to the defendants. For instance, where a party has a safety deposit box containing its own copy of the contract, reason would demand the party compare the asserted copy and its retained copy. But where, as seems likeliest here, a party cannot access any copy of its own and lacks any independent memory, the most investigation that can be required is checking one's email accounts and one's drawers to make sure that she can honestly say as much. What else could the contracting defendant do? As for the non-contracting defendants, they have even fewer routes to investigate: If, as the answer alleges, Shteh purchased a policy from the defendants, could I be certain that the insured Chteh could learn of the specifics of Shteh's policy herself? Even if perhaps Chteh and Shteh, who have worked together, would share that information, what about Mohartam's estate?[11]

For that reason alone, if Shteh expresses doubts authenticity, it must be reasonable for Chteh and the estate to do the same. As to whether Shteh's doubts are reasonable or the claimed dishonesty of his refusing to admit, State Farm cannot offer much background. It, like the Court,

---

[11] In its reply to the Estate's brief, State Farm states "upon information and belief" that a copy of the contract was produced in the underlying discovery. It thus urges the Court, on nothing beyond its own assurances, to force a third party to accept the authenticity of a document whose authenticity a codefendant has not confirmed.

knows virtually nothing about Shteh's mindset. The little information State Farm does have is that Shteh is a Syrian citizen and resident and a Pennsylvania property owner. If Shteh is not fluent in English or familiar with American insurance, that alone might be enough to suggest an honest inability to have fully understood the contents of this contract. These need not be contract defenses to be plausible honest reasons why a person who has kept no copy of a contract would be ignorant of its specifics.

In short, there is no good reason at this point to believe the defendants' doubt is unreasonable. The inquiry into the authenticity of an attachment in doubt where the defendant has no copy of her own to review cannot fail to be reasonable just for having nowhere to go.

### E. An Answer Is Notice, Not Discovery

As our rules of procedure are set up, an answering party need not respond to the complaint as though it were a list of open-ended interrogatories. The answer is instead intended only to "require[] the defendant to give the plaintiff notice of the defenses which it shall be called upon to meet." *Budd Co. v. United States*, 19 F.R.D. 346, 348 (E.D. Pa. 1956). The defendants' denials here accomplish notice as required: They set on the table the question of the authenticity of State Farm's asserted version of the policy.

I do not know if the defendants have good reason to doubt the authenticity of the document they were passed in discovery. I do not know if defense counsel has reason to question the legitimacy of their clients' uncertainty, or if it was defense counsel who raised the issue initially. I also do not know if State Farm is itself in possession of competing versions of its document. If discovery uncovers an actual discrepancy—perhaps the defendants vividly recall a series of amendments that replaced the policy in short order, making it all but impossible to remember which one is controlling—we can heave a sigh of relief. If discovery instead proves that there was no valid basis

for the defendants to question the legitimacy of the policy already passed, for instance where the defendants had on hand an identical copy of the policy *confirming* its legitimacy, then likely Shteh's answer will have been "sham." But if, as I suspect, the defendants simply did not keep their own copy and had too little knowledge of its contents to believe the authenticity of the plaintiff's copy, that would count as *bona fide* ignorance and entitle them to question the authenticity of the plaintiff's copy by Rule 8(b)(5) denial.

The fact that State Farm turned over in the underlying case a copy of what it alleges to be the policy cannot mean that the defendants are somehow constrained or estopped from questioning that document under any circumstances. It would be perverse to hold that the requirement of reasonable inquiry requires defendants to rely on an attachment to the complaint merely because it was also tendered by the opposing party, in related litigation or otherwise. The alleged policy's inclusion in related discovery only replicates here State Farm's asserting its authenticity elsewhere. It does not *corroborate* State Farm's assertion, since if multiple versions exist, it is hardly informative to learn that the plaintiff has a consistent position as to which controls.

### F. Prudence

At base, there is a good reason why the Court should not presume to judge whether a party's denial by ignorance of a contract is "sham" at this stage: Forget the defendants; it is the *Court* who must deny by ignorance, because it knows so little at this level as to what is going on. For the Court to learn enough to grant the motion, that would require some evidence, and for that evidence to exist, there would need to be discovery (or something equivalent), and for that discovery to occur, the Court would need to deny the motion for now—*reductio ad absurdum*. The Court will not rule in favor of a plaintiff at this stage based on its presumptions about the parties that may be unfounded. The apparent result in above-cited cases that business entities are imputed the

12

knowledge within their records stands in unexplained contrast with the alternative result that city agencies are not. Perhaps the majority of businesses are run smoothly and carefully, but some reasonable portion have just been bought by new owners or suffered a warehouse fire or a ransom-ware scam. In any event, I will not apply the same logic to the present defendants.

It would be more efficient if everyone kept their paperwork handy, but a defendant's enti-tlement to question another party's copy from sheer ignorance is a necessity at this stage. Such denials might delay litigation. However, while "dispatch in litigation is highly desirable, it should not be pressed to the point where it shuts out an adequate examination of the merits." *MacDonald v. Du Maurier*, 144 F.2d 696, 701 (2d Cir. 1944) (denying motion for judgment on the pleadings where the court strongly suspected but did not *know* necessary facts that might have been supplied with as little as an affidavit). "Little as we expect any other ultimate result," the Court should not prematurely reach[ it] by a forbidden path." *Id.*

The matter of authenticity should not be difficult to sort out in discovery. (If it proves dif-ficult, then all the better reason not to decide it on the complaint alone.) Where the only question is the authenticity of a document, the Court could require a showing as to why discovery should last more than a matter of weeks. Where it would dispose of the case, the plaintiff may suggest an initial stage of discovery followed by a motion for summary judgment or a motion, now with evidence, to construe the denials as admissions.

Finally, other mechanisms and incentives will offset weaponized ignorance. A party's de-nial by ignorance of an obviously legitimate contract might be used against it later to show her unreasonableness or a lack of candor. It might demonstrate to the plaintiff her weak bargaining position or alternative leads. The denying party will be concerned about the mere appearance of unethical behavior, or about provoking a motion for sanctions (ultimately meritorious or not).

There are more reasons than ethics, that is, for a party to stipulate to the authenticity of a contract passed in discovery.[12]

## IV. <u>Conclusion</u>

A plaintiff is entitled to a reasonable answer on the authenticity of a contract attached to her complaint. Rule 11(b)(4). I merely hold that the defendant, given some reasonable basis to question the authenticity of the contract, is not required to accept the authenticity of an attachment to the complaint if it does not know the attachment to be authentic, and the Court will not impute knowledge of that authenticity barring a strong showing. For the reasons given above, I deny the motion for judgment on the pleadings.

I will schedule a pretrial conference at which I will determine how quickly this case can proceed and discovery can be completed.

---

[12] This ruling does not reach the very different scenario in which a party, upon learning of litigation, intentionally destroys its copy of a contract and then claims ignorance. Regardless, an unscrupulous party would be more likely to falsify a contract than to pretend to have lost it.